**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| DAVID AND BRENDA STANLEY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-05-622-M |
| | ) | |
| FARMERS INSURANCE COMPANY, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>ORDER</u>**

This case is scheduled for trial on the Court's November, 2006 trial docket.

Before the Court is defendant's Motion for Summary Judgment, filed May 8, 2006.  On May

26, 2006, plaintiffs filed their response, and on June 16, 2006, defendant filed its reply.

Additionally, on September 19, 2006, defendant filed a Suggestion of Additional Authority in

Support of Its Motion for Summary Judgment, and on September 25, 2006, plaintiffs filed their

response to defendant's suggestion of additional authority.  Based upon the parties' submissions,

the Court makes its determination.

I.    INTRODUCTION

On December 15, 1999, plaintiffs David and Brenda Stanley ("the Stanleys") moved into

their new home.  After a few months of living in the home, evidence of excessive water from an

unknown source appeared, including mold, warped wallboards, and buckled wood floors.  Not long

after discovering the problem, the Stanleys notified their agent with defendant Farmers Insurance

Company, Inc. ("Farmers") of the problem.

Approximately a year after moving into the home, the Stanleys filed suit against their builder

and alleged that the builder and plumbing subcontractor negligently constructed their home.[1]  In April of 2001, the Stanleys discovered that the main water line coming into their house had broken and that the break was caused by variations in water pressure in the main line combined with a sweat joint that was improperly installed.

On December 16, 2003, the Stanleys filed a formal claim for all available benefits under their policy with Farmers.  Upon receiving the formal claim, Farmers investigated the loss and determined that the losses were caused by the negligence and defective workmanship of the builder and plumbing subcontractor and were, therefore, expressly excluded from coverage under the policy. In September, 2004, the Stanleys' suit against the builder went to trial, and the jury found in the Stanleys' favor, awarding property damages in the amount of $667,000.00.  The trial court also awarded the Stanleys attorneys' fees, costs and prejudgment interest in the amount of $474,303.31.

Additionally, on two separate occasions, Farmers canceled and reinstated the Stanleys' homeowners insurance.   In 2003 and 2004, Farmers sent the Stanleys notice of non-renewal/cancellation.   After the Stanleys' counsel requested that Farmers rescind the non-renewal/cancellation, Farmers rescinded the non-renewal/cancellation on both occasions.

On December 15, 2004, the Stanleys filed the instant action against Farmers alleging claims for breach of contract and bad faith.  Farmers now moves for summary judgment as to both claims.

II.    SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational

_____

[1]The plumbing subcontractor was later added as a third party.

2

trier of fact to find for the non-moving party.  When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party."  *19 Solid Waste Dep't Mechanics v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.  DISCUSSION

The Stanleys assert that the insurance claims they made were covered under their policy with Farmers.  Farmers, however, asserts that the Stanleys' claimed losses are excluded by the policy. The Stanleys' insurance policy provides that the following losses are not covered by the policy:

> **SECTION I – LOSSES NOT INSURED**
> Applying to **Coverage A and B – Dwelling and Separate Structures and Coverage C – Personal Property**
> We do not insure for loss either consisting of, or caused directly or indirectly by:
> 1.     **Earth Movement.**
>         Acts or omissions of **persons** can cause, contribute to or aggravate **earth movement**.  Also, **earth movement** can occur naturally to cause loss, or combine with acts or omissions of **persons** to cause loss.  Whenever **earth movement** occurs, the resulting loss is always excluded under this policy, however caused; except we do cover direct loss by fire or explosions resulting from **earth movement**. The following examples are set forth to help you understand

3

this exclusion and are not meant to be all-inclusive.

\*            \*            \*

**EXAMPLE 3:**
**Water** leaks from a pipe which causes settling, and the settling causes loss to the dwelling, separate structure, or personal property.  Such loss is not covered by this policy, regardless of the cause or causes of the **water** leak.

2.      **Water damage.**
Acts or omissions of **persons** can cause, contribute to or aggravate **water damage**.  Also **water damage** can occur naturally to cause loss or combine with acts or omissions of **persons** to cause loss.  Whenever **water damage** occurs, the resulting loss is always excluded under this policy, however caused; except we do cover direct loss to the dwelling, separate structures, or personal property if caused by fire or explosion resulting from water damage.

The following examples are set forth to help you understand this exclusion and are not meant to be all-inclusive.

**EXAMPLE 1:**
Rain **water** collects on or soaks into the ground surface. Because of faulty design, construction or maintenance of the **residence premises**, your neighbor's property or **water** diversion devices, the **water** causes loss to the dwelling, separate structure, or personal property.  Such loss is not covered by this policy.

**EXAMPLE 2:**
A pipe under your sink breaks, and **water** damages your wallpaper, carpeting and personal property.  The water also gets under the dwelling or separate structure causing **earth movement** which results in cracking of the foundation and walls.  The loss to the wallpaper, carpeting and personal property is covered, but the loss to the foundation and walls is not covered by this policy.

**EXAMPLE 3:**
**Water** which has backed up through sewers or drains, or **water** below ground level causes loss to the dwelling, separate structure or personal property.  Such loss is not

4

covered by this policy.

*          *          *

4.     Faulty, inadequate or defective planning, zoning, development, surveying, siting, design, specifications, workmanship, construction, grading, compaction, maintenance repair materials, construction, remodeling, or maintenance of part or all of any property (including land, structures or any improvements) whether on or off the residence premises.  However, we do cover ensuing loss by fire, explosion or sudden and accidental discharge of **water**.  **Earth movement** is never covered under this policy, however caused.

Insurance Policy at 9-10, attached as Exhibit 12 to Farmers' Motion for Summary Judgment.

Having carefully reviewed the parties' submissions, and viewing the facts and inferences in the light most favorable to the Stanleys, as the Court must at the summary judgment stage, the Court finds that the Stanleys' claimed losses are excluded by the above provisions of their insurance policy.  The Stanleys assert that their losses were caused by a break in the main water line coming into their house which occurred immediately after they moved in, that they did not discover this break until April, 2001, and that an estimated 15,000 gallons of water leaked under the floor slab of their home until it was discovered in April, 2001, a period of approximately fifteen (15) months. *See* Petition at ¶ 7.  Further, the Stanleys agree that the negligence and faulty workmanship of their building and plumbing contractors caused the break in the main water line.

First, the Court finds that the Stanleys' claimed losses fall within the policy's earth movement exclusion.  In fact, the loss scenario in the case at bar is substantially similar to the loss scenario set forth in Example 3 of the earth movement exclusion.  In this case, there was a water leak from a pipe (the main water line) which caused settling, and the settling caused loss to the Stanleys' residence.

Second, the Court finds that the Stanleys' claimed losses fall within the policy's water

5

damage exclusion.  In the case at bar, water damage occurred causing loss to the Stanleys' residence. All loss caused by this water damage is excluded under the policy.[2]

Finally, even if the earth movement and water damage exclusions did not apply, the Court finds that the faulty workmanship exclusion applies to the Stanleys' claimed losses.  It is undisputed that the break in the main water line was caused by faulty workmanship.  The Stanleys, however, assert that the "sudden and accidental discharge of water" exception to the faulty workmanship exclusion applies.

Although the Stanleys set forth a number of non-Oklahoma cases that have found that "sudden and accidental" means unexpected and unintended or that have found the phase "sudden and accidental" to be ambiguous, the Oklahoma Supreme Court has held that the phrase "sudden and accidental" is not ambiguous and that the term "sudden" in the phrase "sudden and accidental" should be viewed in the context of the insurance policy and must be given its plain ordinary meaning.  *Kerr-McGee Corp. v. Admiral Ins. Co.*, 905 P.2d 760, 762-64 (Okla. 1995).  "The ordinary and popular meaning of 'sudden' necessarily includes an element of time."  *Id.* at 763.  The American Heritage College Dictionary, Third Edition, defines "sudden" as "happening without warning; unforeseen. . . . abrupt or rash . . . characterized by rapidity; quick and swift."

In the case at bar, it is undisputed that the break, and subsequent leak, in the main water line occurred shortly after the Stanleys moved into their home and continued over a period of fifteen (15) months.  It is also undisputed that the Stanleys began noticing signs of water damage shortly after they moved into their home.  Mrs. Stanley testified that shortly after moving in she discovered mold

---

[2]The Court would note that all of the direct loss to the residence was repaired by the contractor.

on a wall and that so much water was accumulating in her flower beds, "[y]ou would sink to your knees around my house if you went into the flower beds." Deposition of Brenda Stanley at p.20, ll. 19-20, attached as Exhibit 1 to Farmers' reply. Having reviewed the parties' submissions, and having reviewed the "sudden and accidental discharge of water" exception to the faulty workmanship exclusion in the context of the insurance policy, the Court finds that this exception does not apply to the Stanleys' claimed losses. *See, e.g., Kerr-McGee*, 905 P.2d at 764 (holding that ordinary meaning of "sudden" cannot describe gradual routine disposal of industrial waste).

The Court, therefore, finds that the Stanleys' claimed losses are excluded by their insurance policy. Accordingly, the Court finds that Farmers is entitled to summary judgment as to the Stanleys' breach of contract claim.

"[A] determination of liability under the [insurance] contract is a prerequisite to a recovery for bad faith breach of an insurance contract." *Davis v. GHS Health Maint. Org., Inc.*, 22 P.3d 1204, 1210 (Okla. 2001). *See also Expertise, Inc. v. Aetna Fin. Co.*, 810 F.2d 968, 972 (10th Cir. 1987) (holding that plaintiff must establish that binding agreement has been breached to invoke bad faith breach of contract theory). Because the Court has found that the Stanleys' claimed losses are excluded by their insurance policy and that Farmers, consequently, is not liable under the insurance policy, the Court finds that the Stanleys cannot recover under their bad faith breach of contract claim.

Finally, the Stanleys base their bad faith claim in part upon Farmers' attempted non-renewal of their policy. "[T]he conduct of the insurer and the agent in selling and issuing the [insurance] policy, cannot give rise to the tort of bad faith breach of an insurance contract." *Claborn v. Wash. Nat'l Ins. Co.*, 910 P.2d 1046, 1051 (Okla. 1996). Further, "[t]he tort of bad faith breach of an

insurance contract must be based upon an insurer's wrongful denial of a claim; it cannot be based upon the conduct of the insurer in selling and issuing the policy." *Hays v. Jackson Nat'l Life Ins. Co.*, 105 F.3d 583, 590 (10th Cir. 1997).  Accordingly, the Court finds that the Stanleys cannot maintain a bad faith claim based upon Farmers' conduct in attempting not to renew the Stanleys' insurance policy.

IV.    <u>CONCLUSION</u>

For the reasons set forth in detail above, the Court GRANTS Farmers' Motion for Summary Judgment [docket no. 28].

**IT IS SO ORDERED this 25th day of October, 2006.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE